Filed in Open
Court
4/19/10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 10-00059 |
| | * | |
| v. | * | |
| | * | |
| SARA ELLIS MORRIS | * | |

## PLEA AGREEMENT

The defendant, **SARA ELLIS MORRIS**, represented by her counsel, and the United

States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal

Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.    The defendant understands her rights as follows:

    a.    To be represented by an attorney;

    b.    To plead not guilty;

    c.    To have a trial by an impartial jury;

    d.    To confront and cross-examine witnesses and to call witnesses and produce

        other evidence in her defense;

    e.    To not be compelled to incriminate herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.    The defendant waives rights b through e, listed above, and pleads guilty to Count

One of the Information, charging a violation of Title 18, United States Code, Section 1349,

conspiracy to commit wire and mail fraud.

1

3.     The defendant understands that the statements she makes under oath in the plea of guilty must be completely truthful and that she can be prosecuted for making false statements or perjury for any false statements she makes intentionally in this plea of guilty.

4.     The defendant expects the Court to rely upon her statements here and her response to any questions that she may be asked during the guilty plea hearing.

5.     The defendant is not under the influence of alcohol, drugs, or narcotics.  She is certain that she is in full possession of her senses and mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.     The defendant has had the benefit of legal counsel in negotiating this Plea Agreement.  She has discussed the facts of the case with her attorney, and her attorney has explained to the defendant the essential legal elements of the criminal charges which have been brought against her.  The defendant's attorney has also explained to the defendant his understanding of the United States' evidence.

7.     The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt.  The defendant and her counsel have discussed possible defenses to the charges.  The defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice of her attorney.

8.     A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing.  The Factual Resume is incorporated by reference into this Plea Agreement.  The defendant and the United States agree that the Factual Resume is true and correct.

9.    This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court may impose. The defendant avers that she is pleading guilty because she knows that she is guilty.

## PENALTY

10.    The maximum penalty the Court could impose as to Count One is:

    a.    A sentence of 30 years;

    b.    A fine not to exceed $ 1,000,000.00;

    c.    A term of supervised release of 5 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

    d.    A mandatory special assessment of $100.00.

## SENTENCING

11.    The Court will impose the sentence in this case. The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that she will not be allowed to withdraw her guilty plea if the applicable guideline range is higher than expected, if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence

3

notwithstanding the Guidelines.

12.    The United States may provide all relevant sentencing information to the Probation

Office for purposes of the pre-sentence investigation.  Relevant sentencing information includes,

but is not limited to, all facts and circumstances of this case and information concerning the

defendant's conduct and background.

13.    The defendant understands that this Plea Agreement does not create any right to be

sentenced in accordance with the Sentencing Guidelines, or below or within any particular

guideline range, and fully understands that determination of the sentencing range or guideline

level, or the actual sentence imposed, is solely the discretion of the Court.

14.    Both the defendant and the United States are free to allocute fully at the time of

sentencing.

15.    The defendant agrees to tender $100.00 to the United States District Court Clerk in

satisfaction of the mandatory special assessment in this case.  The United States reserves the

right to withdraw any favorable recommendations it may agree to within this document if the

defendant fails to pay the special assessment prior to or at the time of her sentencing.

### APPLICATION OF U.S.S.G. § 5K1.1 AND/OR FED.R.CRIM.P. 35

16.    If the defendant agrees to cooperate with the United States, she agrees to the

following terms and conditions:

a.    The defendant shall **fully, completely, and truthfully** respond to all questions

put to her by law enforcement authorities regarding the underlying facts of the

offense(s) with which she is charged, as well as the underlying facts of **any**

criminal offense(s), state or federal, of which she has information or

knowledge.

b.    The defendant acknowledges that she understands that she shall provide **truthful and complete** information regarding **any** offense about which she has knowledge or information regardless of whether or not law enforcement authorities question her specifically about any such offense.  This provision requires the defendant to divulge all information available to her even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense.  This requirement extends to **any and all persons** about whom the defendant has such knowledge or information.

c.    The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which her cooperation may be deemed relevant by any law enforcement authority.  The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance she shall provide.  This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying **completely and truthfully** before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d.    If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher.  The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether or

not there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e.    The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in her possession or under her control and which are relevant to her participation in and knowledge of criminal activities whether relating to the charged offense or not. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f.    The defendant agrees to confess the forfeiture to the United States of all properties which represent proceeds of her criminal activities or which facilitated any aspect of these illegal activities. The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g.    If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the

6

decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation.  The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance for this purpose.  The defendant also understands that should she provide untruthful information to the United States at any time, or should she fail to disclose material facts to the United States at any time, the United States will not make a motion for downward departure.  If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend to the district court judge who sentences the defendant that the defendant receive a sentence at the low end of the applicable advisory guideline range.

h.     The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by her from her illegal activities or obtained by others associated with her or of which she has knowledge, refusing to take a polygraph examination, failing a polygraph

7

examination, or refusing to testify before the grand jury or at any judicial

proceeding, would:

(1)   permit the United States to reinstate and proceed with prosecution on any

other charges arising from the matters underlying the Information; and

(2)   permit the United States to instigate and proceed with the prosecution on

any other charges arising from a breach of this agreement.  The United

States will not be limited, in any respect, in the use it may make against

the defendant of any information provided by the defendant during his

breached cooperation.  Such breach will constitute a waiver of any claim

the defendant could make under the United States Constitution, the

Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or

any statute or case law by which the defendant seeks to suppress the use

of such information or any evidence derived from such information.

i.   Nothing in this agreement shall protect the defendant in any way from

prosecution for any offense committed after the date of this agreement,

including perjury, false declaration, false statement, and obstruction of justice,

should the defendant commit any of these offenses during his cooperation.  The

defendant acknowledges and agrees that the information and documents that

she discloses to the United States pursuant to this agreement may be used

against her in any such prosecution.

j.   The United States and the defendant agree that the defendant will continue her

cooperation even after she is sentenced in the instant matter.  Her failure to

continue her cooperation will constitute a breach of this agreement, and the

defendant agrees that under such conditions, the United States will be free to

reinstate the charges and the prosecution of the charges in the Information,

which are to be dismissed in accordance with this agreement.  Under these

circumstances, the defendant expressly waives any rights she may have under

the statute of limitations and the speedy trial provisions.

## RESTITUTION

17.    Pursuant to 18 U.S.C. §§ 3556 and 3663(A), restitution is mandatory.  The defendant

agrees to make full restitution, for which she is jointly and severally liable, in an amount to be

determined by the Court at sentencing.

18.    The defendant understands and agrees that the determination of the actual amount of

restitution is to be determined by the Court.

19.    The defendant agrees to pay full restitution whether the restitution amount relates to

the count of conviction, or not.

## UNITED STATES' OBLIGATIONS

20.    The United States will not bring any additional charges against the defendant related

to the facts underlying the Information.  This agreement is limited to the United States Attorney's

Office for the Southern District of Alabama and does not bind any other federal, state, or local

prosecuting authorities.

## LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE

21.    The defendant acknowledges that she is aware that 18 U.S.C. § 3742 affords a

defendant the right to appeal the sentence imposed.  In exchange for the recommendations made

by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case. "Any sentence imposed" includes any proceeding relating to the modification or revocation or the supervised release term.

22.     With the limited exceptions noted below, the defendant also waives her right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255.

23.     The defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

   a.     Any punishment imposed in excess of the statutory maximum;

   b.     Any punishment that constitutes an upward departure from the guideline range; or

   c.     A claim of ineffective assistance of counsel.

24.     In addition, the defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the defendant's sentence.

## VIOLATION OF AGREEMENT

25.     The defendant understands that if she violates any provision of this agreement, the United States will be free from any obligations imposed by this agreement and will be free to prosecute the defendant on any charges of which it has knowledge.  In such event, the defendant agrees not to assert any objections to prosecution that she might have under the 6th Amendment and/or Speedy Trial Act.

26.     In addition, if the defendant is released from detention prior to sentencing, she

10

understands that the United States will no longer be bound by this agreement if she violates any condition of his release prior to sentencing or prior to serving her sentence after it is imposed.

## ENTIRETY OF AGREEMENT

27.   This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,
KENYEN R. BROWN
UNITED STATES ATTORNEY

Date: __4/16/10__

By: ___Deborah A. Griffin___
Deborah A. Griffin
Assistant United States Attorney

4/16/10

I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Information pending against me.  I have read this Plea Agreement and carefully reviewed every part of it with my attorney.  I understand this agreement, and I voluntarily agree to it.  I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: __4-19-10__

___Sara Ellis Morris___
SARA ELLIS MORRIS
DEFENDANT

I am the attorney for the defendant.  I have fully explained her rights to her with respect to the offenses charged in the Information in this matter.  I have carefully reviewed every part of

11

this Plea Agreement with her.  To my knowledge, her decision to enter into this agreement is an

informed and voluntary one.  I have carefully reviewed the Factual Resume, incorporated herein,

with the defendant and to my knowledge, her decision to stipulate to the facts is an informed,

intelligent and voluntary one.

Date:___4/19/10___          _____
                            ARTHUR MADDEN
                            Counsel for DEFENDANT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO.  01-00059 |
| v. | * | |
| | * | |
| SARA  ELLIS  MORRIS | * | |

### FACTUAL RESUME

The defendant, **SARA  ELLIS  MORRIS**,  admits the allegations of Count One of the Information, charging a violation of 18 U.S.C. § 1349, conspiracy to commit wire fraud and mail fraud.

### ELEMENTS OF THE OFFENSE

**MORRIS** understands that in order to prove a violation of Title 18, United States Code, Section 1349, as charged in Count One of the Information, the United States must prove:

First:   That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the Information;

Second:   That the Defendant, knowing the unlawful purpose of the plan, willfully joined in it.

Elements of 18 U.S.C. §1343, wire fraud, object of the conspiracy:

First:   That the Defendant knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false pretenses, representations or promises;

1

Second:        That the false pretenses, representations or promises related to a material

fact,

Third:         That the Defendant did so willfully and with an intent to defraud; and

Fourth:        That the Defendant transmitted or caused to be transmitted by wire in

interstate commerce some communication for the purpose of executing the

scheme to defraud.

Elements of 18 USC § 1341, Mail Fraud, object of the conspiracy:

First:         That the defendant knowingly devised or participated in a scheme to

defraud, or for obtaining money or property by means of false or

fraudulent pretenses, representations or promises;

Second:        That the false or fraudulent pretenses, representations or promises related

to a material fact;

Third:         That the defendant acted willfully with an intent to defraud; and

Fourth:        That the defendant used a private or commercial interstate carrier by

depositing or causing to be deposited some matter or thing to be delivered

by the carrier for the purpose of executing the scheme to defraud.

## OFFENSE CONDUCT

Defendant, **MORRIS,** admits in open court and under oath that the following statement is

true and correct and constitutes the evidence in this case. This statement of facts is provided

solely to assist the Court in determining whether a factual basis exists for **MORRIS'** plea of

guilty. The statement of facts does not contain each and every fact known to **MORRIS** and to

the United States concerning the defendant's involvement in the charges set forth in the

2

indictment.

**MORRIS** and Jennifer Cox worked for Unindicted Co-Conspirator Number 1 (CC #1), who owned a mortgage company in Pensacola, Florida. From as early as August of 2002 through and including August of 2007, CC #1 and other members of the conspiracy recruited straw buyers to submit false loan applications to mortgage lenders and financial institutions for purchases of condominiums in the Southern District of Alabama and elsewhere. CC #1 offered to make the down payment on the purchases and/or pay all, or a major portion of, the monthly mortgage payments. The straw buyers would receive a percentage of the profits when CC #1 sold the condominiums. CC #1 attempted to resell each condominium at a profit shortly after the straw buyer closed on the condominium so as to further the scheme.

To carry out the scheme, CC #1's co-conspirators prepared loan applications containing false financial information and/or failed to disclose that CC #1 would be making the mortgage payments rather than the straw buyers so loans would be approved. The loan applications were then faxed, delivered by commercial interstate carrier, or e-mailed from Pensacola, Florida to mortgage lenders and financial institutions in the Southern District of Alabaman and elsewhere. Thereafter, in furtherance of the scheme, CC #1, **MORRIS**, Cox and other members of the conspiracy caused information and/or documents to be faxed, delivered by commercial interstate carrier, or e-mailed back and forth between Pensacola, Florida and the Southern District of Alabama and elsewhere.

CC #1 represented that his mortgage company was the original lender. He resold the mortgages to the various mortgage lenders or financial institutions to whom the loan applications were faxed, e-mailed, or delivered by commercial interstate carrier. Had the mortgage lenders

3

and financial institutions known the true financial status of the straw buyers or that the straw buyers would not be making the mortgage payments themselves, the loans would not have been approved.

After a loan was approved and a condominium purchased, CC #1 would direct **MORRIS** to pay the amount of, or a large percentage of, the monthly mortgage payment to the straw buyer who would then pay the mortgage to the mortgage lender or financial institution.  CC #1 would then resell the condominiums as quickly as possible and split a percentage of the profits with the straw buyers.  Ultimately, CC #1 could not resell all of the condominiums and then pay all the mortgages.  The majority of the properties were foreclosed and the mortgage lenders and financial institutions suffered losses.

**MORRIS** also held straw mortgages in her name for CC #1, one of which was on a condominium in Navy Cove in Gulf Shores, Alabama.   CC #1 paid the mortgage on this condominium through **MORRIS** until he could no longer afford to do so.  The property was ultimately foreclosed.  **MORRIS'** initial mortgage on this condominium was $400,000.00.  Her down payment of  $133,041.53 on this mortgage was provided to her by CC #1.  **MORRIS** deposited the money into her account and then paid the funds at the closing so it would appear that she had made the down payment using her own funds.

In 2006, at CC #1's direction Cox approached Straw Buyer Number 1 (SB #1) about purchasing a condominium, telling SB #1 that when the condominium sold, CC #1 would pay SB #1 a percentage of the sale price.  In July of 2007, CC #1 told SB #1 he could no longer afford to make the payments and the condominium was foreclosed.  The down payment shown on the loan application for this condominium from the buyer (SB #1), was provided to SB #1 by CC #1 so

4

the condominium would close.  There were a number of other straw buyers.

During the conspiracy and in furtherance of the scheme, on December 6, 2006, an e-mail

concerning the closing of a condominium in Gulf Shores, Alabama by a straw buyer was sent

from a Title Company in Gulf Shores, Alabama to CC #1's mortgage company in Pensacola,

Florida.  During the conspiracy and in furtherance of the scheme, on July 25, 2006, closing

documents, pertaining to the purchase of a condominium in Gulf Shores, Alabama, were

transported by UPS, a commercial interstate carrier, from a Title Company in Gulf Shores,

Alabama to the straw buyer in Florida.

AGREED TO AND SIGNED.

Respectfully submitted,
KENYEN R. BROWN
UNITED STATES ATTORNEY

Date: 4/16/10

By: _____
DEBORAH A. GRIFFIN
Assistant United States Attorney

Date: 4-19-10

_____
SARA ELLIS MORRIS
Defendant

Date: 4-12-10

_____
ARTHUR MADDEN
Counsel for Defendant

5